[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12608
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00210-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARBARA J. WALLACE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(June 25, 2018)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Barbara J. Wallace appeals her 41-month sentence, imposed at the high-end of the advisory guideline range, after pleading guilty to a single count of health care fraud, in violation of 18 U.S.C. § 1347, based on the submission of fraudulent Medicaid claims for orthotics. Wallace raises three arguments on appeal. First, she contends that the government was required to disclose the claims included in the statistical sample that it used to calculate the loss amount under the guidelines pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. § 3500. Second, she contends that the district court clearly erred in accepting the government's loss amount calculation, which was based on the statistical sample and underlying conclusion that Medicaid claims lacking a doctor's order were fraudulent. Finally, Wallace argues that the district court erred in ordering restitution in the same amount as the amount of loss under the guidelines. We address each argument in turn.

I.

We ordinarily review an alleged *Brady* violation *de novo* and a district court's Jencks Acts findings for clear error. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010). We review an argument raised for the first time on appeal, however, for plain error. *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006). Plain error requires an "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* (quotation omitted). "[W]here the explicit language of a

2

statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). In most cases, to affect substantial rights, an error must be prejudicial—that is, it must have impacted the outcome of the district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993). If all three conditions are met, we will notice a forfeited error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Schier,* 438 F.3d at 1107 (quotation omitted).

Under *Brady*, the government's suppression of evidence favorable to a defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To establish a *Brady* violation, a defendant must prove:

> (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.

*Schier*, 438 F.3d at 1106 n.1. To establish prejudice, or materiality, "a defendant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," which is "a probability sufficient to undermine confidence in the outcome." *Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 258 (11th Cir. 2013) (quotation omitted). "The

3

mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish prejudice." *United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015) (quotation omitted).

Where a witness testifies on direct examination, the district court, on the motion of opposing party, must order the party who called the witness "to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). Rule 26.2 "place[s] in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the Jencks Act)" and applies at sentencing. *See* Fed. R. Crim. P. 26.2(g)(2) & advisory committee note (1979), 32(i)(2); *see also United States v. Jordan*, 316 F.3d 1215, 1227 n.17 (11th Cir. 2003). The Jencks Act, which specifically addresses the government's disclosure requirements when it calls a witness to testify on direct examination, requires the government to produce, on the defendant's motion, any statement of the witness in its possession relating to the subject matter of the witness's testimony. *See* 18 U.S.C. § 3500(b), (e). Statements include written statements made by the witness, recordings of a substantially verbatim oral statement made by the witness, or a witness's statements to a grand jury. *See id.* § 3500(e). For the Jencks Act to apply, "a defendant is required to request disclosure following the witness's direct

4

testimony" and must establish that a particular statement falls within its reach. *Schier*, 438 F.3d at 1112.

The district court did not plainly err in ruling that the government was not required, under *Brady* or the Jencks Act, to disclose which 200 Medicaid claims were included in the statistical sample that it used to calculate the loss amount under the guidelines.  The district court did not plainly err because no binding authority requires the government to disclose, pursuant to either *Brady* or the Jencks Act, the specific subset of data it uses to extrapolate a loss amount; moreover, the record does not suggest that of the outcome of the proceedings would have differed had the sample information been disclosed. Wallace had all the source data from which the 200-claim sample was drawn, and Wallace does not identify any argument she could have raised only if she had the subset information. Finally, Wallace did not invoke the Jencks Act by objecting to witness testimony at sentencing. The act requires a defendant to affirmatively request or move for disclosure of a witness's statement following his or her testimony.  She also made no attempt to show that the government's collection of the 200 sampled claims was a "statement" of any government witness within the meaning of the Jencks Act.

## II.

Though we review a district court's interpretation of the sentencing guidelines *de novo*, we examine its factual determinations, including those made as

5

to the amount of loss, for clear error.  *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007); *see also* U.S.S.G. § 2B1.1, comment (n.3(C)).  We will overturn a loss amount calculation for clear error if we are "left with a definite and firm conviction that a mistake has been committed."  *United States v. Stein*, 846 F.3d 1135, 1151 (11th Cir.) (quotation omitted), *cert. denied*, 138 S. Ct. 556 (2017).

Under U.S.S.G. § 2B1.1(b)(1), the amount of loss is the greater of the actual or intended loss.  *See* U.S.S.G. § 2B1.1(b)(1), comment. (n.3(A)).  Where the loss amount is more than $550,000 but less than $1,500,000, a fourteen-level increase applies.  *See id.* § 2B1.1(b)(1)(H).  In calculating the amount of loss, the district court "need only make a reasonable estimate of the loss" based on available information.  *See id.*, comment. (n.3(C)).  Accordingly, the guidelines authorize a district judge to rely on factors such as the approximate number of victims multiplied by the average amount of loss to each.  *Id.*  "A reasonable estimate of the loss amount is appropriate because often the amount of loss caused by fraud is difficult to determine accurately."  *Medina*, 485 F.3d at 1303 (quotation omitted).  Nevertheless, the court must not speculate as to facts permitting a more severe sentence under the guidelines.  *Id.*  The government must prove the amount of loss by a preponderance of the evidence using "reliable and specific evidence."  *Id.* (quotation omitted).

6

The district court did not clearly err in accepting a loss amount calculation based on a statistical sample because there were more than 10,000 claims in total and the guidelines only require courts to make a reasonable estimate of the loss based on available information.  Nor was it clear error, in light of the evidence presented, for the court to accept a sample based on the conclusion that Medicaid claims for orthotics lacking a doctor's order were fraudulent.  The court heard testimony from four witnesses at sentencing indicating that such claims require a prescription and that the inclusion of an "EY modifier" is not relevant to Medicaid claims.  Wallace also admitted in her plea agreement that she caused to be submitted to Medicaid fraudulent claims for orthotics that were not authorized by a physician.

### III.

The factual findings underlying a restitution order are ordinarily reviewed for clear error.  *See United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008).  However, a challenge to a restitution order raised for the first time on appeal is reviewed for plain error.  *United States v. Romines*, 204 F.3d 1067, 1068 (11th Cir. 2000).

Under the Mandatory Victims Restitution Act ("MVRA"), a court may order a defendant convicted of fraud "to make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1)(A).  "The method for calculating actual loss, as opposed

7

to intended loss, under the Sentencing Guidelines is largely the same as the method for establishing actual loss to identifiable victims under the MVRA," so ordinarily, the amount of actual loss under the guidelines and the restitution figure will be the same. *Stein*, 856 F.3d at 1153. To prove that a victim suffered an actual loss, or to prove actual loss under the guidelines, the government must establish both "but-for" and proximate causation. *Id.* To establish but-for causation, the government must show that the victim relied on the fraudulent information. *Id.* To establish proximate causation, the government must show that a victim's pecuniary loss was reasonably foreseeable to the defendant, not the result of unforeseen intervening events. *Id.* at 1154-55. Undisputed facts contained in presentence investigation report ("PSI") are deemed admitted for sentencing purposes. *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009).

The district court did not plainly err in relying on the loss amount to determine restitution because the methods for calculating the actual loss amount and restitution are the same, and the record contains sufficient evidence that Wallace's fraud was both the but-for and proximate cause of Medicaid's loss. After pleading guilty to submitting fraudulent Medicaid claims for orthotics that were not prescribed by a doctor, Wallace did not contest statements in the PSI showing that she certified the claims made to Medicaid were true and correct and were for services that were medically necessary and in fact provided. Nor did she

8

contest facts showing that she had substantial billing experience and previously instructed her employees on how claims should be billed.  In light of these facts—which are deemed admitted, and which support the conclusion that Medicaid relied on false information Wallace supplied, and that its reliance was reasonably foreseeable to Wallace—the district court did not plainly err in ordering restitution to be paid in the same amount as the loss amount under the guidelines.

**AFFIRMED.**